NOT RECOMMENDED FOR PUBLICATION
OR CITATION AS AUTHORITY

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND DIVISION

CIVIL ACTION NO. 05-CV-216-HRW

ALONZO SUGGS                                                                PETITIONER

VS:            **MEMORANDUM OPINION AND ORDER**

TERRY O'BRIEN                                                              RESPONDENT

\*\*   \*\*   \*\*   \*\*   \*\*

On November 7, 2005, Alonzo Suggs, an individual currently in the custody of the Federal Bureau of Prisons ("BOP") and incarcerated in the Federal Correctional Institution in Ashland, Kentucky, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. §2241, and on November 29th he paid the district court filing fee.

This matter is before the Court for initial screening. 28 U.S.C. §2243; *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

## CLAIMS

The petitioner claims that a prison disciplinary proceeding, which ended with his being punished with the loss of 15 days of good conduct time, was conducted in violation of his substantive and procedural due process rights.

## FACTUAL ALLEGATIONS

The following is a summary of the allegations contained in the instant petition and

documentary exhibits attached thereto.

Petitioner Suggs begins with the facts of his current incarceration, serving a 300-month sentence, with a projected release date, via good conduct time, of July 28, 2022. He complains of a January 27, 2005 decision of a Disciplinary Hearing Officer ("DHO"), who found him guilty of accepting money from another inmate or any other person without staff authorization, a code 217 offense, for which he was penalized with the loss of 15 days of good conduct time.

The relevant facts begin on November 13, 2004, when the BOP overheard a telephone conversation of another inmate, Eugene Gesuale, asking his sister to send a certain amount of money to Alonzo Suggs. The BOP was conducting an investigation focusing on Gesuale, who was suspected of engaging in illegal activities or violations of disciplinary regulations. On November 24th, the petitioner was placed in administrative segregation, and on November 29th he was questioned about Gesuale's telephone conversation, which the BOP had recorded. The petitioner denied any knowledge of it or of any planned impropriety. Rather, as Suggs told authorities, he had asked a nephew to send money and would attribute monies received in his account as being from the nephew.

A few hours before that interrogation, at 5:18 a.m., the sum of $300, in one money order for $100 and another one for $200, both sent by Gesuale's sister, was deposited to Suggs' inmate account. The petitioner remained in segregation and had spent approximately $100 by January 3, 2005. On that date, he was presented with the charging incident report and released from segregation. In the incident report, a BOP investigator recites that an investigation had just concluded and the petitioner was charged with receiving money for a prohibited purpose, a BOP code 217 offense. Exhibit [hereinafter "Ex."] 3. The prohibited purpose was to buy things at the

2

commissary for Gesuale, rather than Gesuale's having the money in his own account where it would be subject to payment of court-ordered financial obligations. The petitioner then and now denies any knowledge of such a plan and complains that the incident report of January 3rd, giving the offense date of November 29th, was well past the 24-hour notice requirements for BOP disciplinary proceedings.

The Unit Disciplinary Committee met but referred the matter to a DHO to decide, the committee's notice of the referral identifying the offense as a code 217 but describing the charge differently, *i.e.*, exchanging money for contraband. The petitioner complains that this, too, was improper and caused a harsher penalty to be imposed by the DHO. The subsequent decision [Ex. 5] of the DHO reveals that at a hearing before him, the petitioner continued to deny any knowledge of the Gesuale plan, to assert that he thought the money was from his nephew, and to object to the purported "untimely" incident report.

At the January 27, 2005 DHO hearing, in addition to the petitioner's statements denying guilt, a prison Case Manager testified, stating that he had interviewed Gesuale and he had explained the deposit on the rationale that he was fond of inmate Suggs and "wanted to help him out for Christmas." Gesuale also testified in Suggs' behalf. Gesuale stated that Suggs had worked for him in the law library to the extent of making so many copies there that Suggs had no money left on his copy card, so he had his sister send him money. Even though he also claimed that Suggs was not in on the plan, Gesuale also stated, "Naturally, I wasn't going to let him keep the entire $300. I would expect him to by [sic] me sausages and cheeses from the commissary." *Id.*

The DHO found the petitioner guilty of a lesser offense, *i.e.*, the Code 328 offense of accepting money from another inmate or any other person without staff authorization. In his report,

3

he lists the evidence on which he relied, in addition to the testimony of these three men. The DHO listed the incident report by a BOP officer; the tape recording of Gesuale's conversation with his sister; photocopies of the money orders sent by the sister; and Suggs' inmate account statements, which reflected small deposits to and small deductions from his inmate account heretofore, as compared to large amounts on and after November 29, 2004.

The petitioner appealed the DHO decision, Administrative Remedy Number 368613, through the BOP administrative system, all levels upholding the decision and specifically denying that there was any violation of Suggs' due process rights throughout the proceedings. It was determined that the DHO's decision was reasonable, the procedures were substantially followed, and the sanction was appropriate to the offense. Ex. 9. Having exhausted the BOP process, the petitioner brought the instant action to recover the 15 days of good conduct time.

## DISCUSSION

Procedural due process is mandated by the U. S. Constitution when the sanction affects the duration of a prisoner's sentence or imposes an atypical and significant hardship on the prisoner in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Since the sanction imposed in the disciplinary proceeding challenged herein does affect the length of Petitioner Suggs' incarceration, by 15 days, under the U.S. Constitution's due process clause, he is entitled to certain procedures.

In *Wolff v. McDonnell*, 418 U.S. 539 (1974) the Supreme Court set out what disciplinary procedures are mandated by the Constitution. A prisoner charged with an offense for which he may lose good time credits must be given (1) a 24-hour written notice of the charge; (2) a qualified right to call witnesses; and (3) a written statement by the fact-finders as to the evidence relied on and

4

reasons for the disposition, all as set out in *Wolff*. 418 U.S. at 564-65.

The instant petitioner was given the document charging him with the disciplinary offense more than 24 hours prior to his "trial" on the charge; he had more than 3 weeks between notice of the charge and the DHO hearing. Suggs was able to and did call two witnesses, who testified at the hearing. And the DHO's decision, attached to his petition, does indeed recite the evidence relied on and the reasons for the disposition. Further, as to the time issue, the petitioner has failed to show any prejudice from the incident report's being written only a few hours after the conclusion of the investigation, rather than earlier. In fact, the petitioner has not demonstrated that the notice in the January 3rd incident report is insufficient in time or in content.

It is also true that even if the *Wolff* procedures are provided, the prisoner's time still cannot be forfeited unless there is "some evidence" of his guilt. *Superintendent v. Hill*, 472 U.S. 445 (1985). In *Hill*, the Supreme Court held that

> . . . the revocation of [good time] credits must be supported by some evidence in order to satisfy the minimum requirements of procedural due process . . . . [a]scertaining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of witnesses' credibility, or weighing of the evidence, but, instead, the relevant question is whether there is any evidence in the record to support the disciplinary board's conclusion.

*Id.* at 454-55. A review of a decision of a prison disciplinary board does not involve a redetermination of an inmate's innocence or guilt. A court merely ensures that a disciplinary decision is not arbitrary and does have evidentiary support. *Id.* at 457.

To the extent the plaintiff is asserting that the evidence supplied by the officer writing the incident report lacks credibility, independent assessment of witnesses' credibility is not required of the Court. *Id.* at 455. Moreover, the credibility determinations of the hearing officers cannot be

disturbed on appeal. *See Wagner v. Seely,*, 915 F.2d 1575, 1576 (7th Cir. 1990) (unpublished), *cert. denied* 501 U.S. 1219 (1991).

In this case there is "some evidence" of the petitioner's guilt. There was a telephone conversation implicating Suggs and an investigation which culminated in Suggs' incident report. The money requested by Gesuale did appear in Suggs' account. The petitioner began an uncharacteristic spending spree, compared to his spending history. Gesuale first claimed that he was just fond of Suggs and wanted to increase his Christmas pleasure, but later admitted at a hearing that he expected Suggs to make some purchases for him. The petitioner also complained that the evidence before the DHO is different from what he was able to obtain later, which were photocopies or photocopies and had redactions. But how does this undermine the supporting evidence before the DHO?

Nor has the petitioner stated a substantive due process claim. The petitioner "must show that the government conduct in question was so reprehensible as to 'shock the conscience' of the court." *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n.4 (6th Cir. 1995) (citing *Rochin v. California*, 342 U.S. 165 (1951)); *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir. 1993)); *see also Cale v. Johnson*, 861 F.2d 943, 949 (6th Cir. 1988). This Court's conscience is not shocked by the result herein, or that a correctional officer will believe another officer and evidence supporting the offense charged above inmates' denials and shifting explanations.

## CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1)     Alonzo Suggs' petition for writ of habeas corpus is **DENIED**;

6

(2)     this matter is **DISMISSED**; and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Respondent.

This the  3  day of January, 2006.

_____
HENRY R. WILHOIT, JR.
SENIOR U. S. DISTRICT JUDGE